UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL INDUSTRIAL INVESTMENT LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>1955 CAPITAL FUND I GP LLC, et al.,<br><br>Defendants. | Case No. 21-cv-08924-HSG<br><br>**ORDER GRANTING PETITION TO CONFIRM FINAL ARBITRATION AWARD AND DENYING MOTION TO VACATE**<br><br>Re: Dkt. Nos. 1, 35 |

Pending before the Court is the petition to confirm arbitration award, filed by Petitioners Global Industrial Investment Limited and China Fortune Land Development, and the cross-petition to vacate the arbitration award, filed by Respondents 1955 Capital Fund I GP LLC and 1955 Capital China Fund GP LLC. *See* Dkt. Nos. 1, 35. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** the motion to confirm the arbitration award and **DENIES** the motion to vacate the award.

**I.    BACKGROUND**

This case involves a lengthy and complex contractual dispute among the parties. The parties are familiar with this history, and the Court only details those facts necessary to resolve the cross-petitions.

In November 2015, Petitioner Global Industrial Investment Limited ("GIIL") and Respondents 1955 Capital Fund I GP LLC and 1955 Capital China Fund GP LLC (the "Respondents" or "GPs") entered into a set of agreements regarding the governance, operation, and implementation of two Delaware limited partnership venture capital investment funds (the

"Funds").[1]  *See* Dkt. Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, Exs. A–F ("Investment Agreements"); *see also* Dkt. No. 35-3, Ex. B ("First Arbitration Award") at ¶¶ 2–4, 18.  As relevant to this action, the Investment Agreements contained an arbitration provision.  *See* Investment Agreements, Ex. A at 9; Ex. B at 10; Ex. C at 2.[2]

  Under the Investment Agreements, GIIL agreed to provide $200 million of venture capital to the Funds in three installments over a two-year period.  *See* Dkt. No. 1-8, Ex. G ("Second Arbitration Award") at ¶ 3.  It is undisputed that GIIL made an initial investment of $80 million, but did not make the second or third installments in December 2016 and December 2017.  *See id.*; *see also* Dkt. No. 1 at 4; Dkt. No. 35 at 8–9.  In July 2017, Respondents therefore initiated arbitration against Petitioners, arguing that they had breached the Investment Agreements by failing to pay (the "First Arbitration").  *See* First Arbitration Award at ¶¶ 55, 60–63, 370; *see also* Second Arbitration Award at ¶ 4.  Petitioners counterclaimed, arguing that Respondents had made material misrepresentations prior to the parties signing the Investment Agreements and that Respondents had breached their fiduciary duties under the Investment Agreements.  *See* First Arbitration Award at ¶¶ 67–85, 371.  Petitioners urged that the agreements were void and unenforceable, and the initial $80 million they paid to the Funds should be returned.  *Id.*

  The arbitrator, Gerald W. Ghikas, Q.C., issued a final award on June 26, 2019.  *See generally id.*  Arbitrator Ghikas found the Investment Agreements were valid and enforceable, and that GIIL and CFLD had breached the agreements by failing to make the installment payments.  *See id.* at ¶¶ 135–207, 216–230, 349–69, 394–98, 422.  He further found that Respondents had breached their fiduciary duties by, *inter alia*, attempting to change the terms of the Investment Agreements in a way that was beneficial to them but more onerous for Petitioners.  *Id.* at ¶¶ 288–325, 391–93.  The arbitrator awarded each side nominal damages for (1) Petitioners' breach of contract and breach of the implied covenant of good faith and fair dealing ($200); and

---

[1] Petitioner GIIL is the sole limited partner in the Funds, and the wholly owned subsidiary of Petitioner China Fortune Land Development ("CFLD").  Respondents are the general partners of the Funds.  *See* First Arbitration Award at ¶¶ 2–3.
[2] For ease of reference, the Court refers to the PDF pagination for all exhibits rather than the document's internal pagination unless otherwise noted.

Respondents' breach of fiduciary duties ($100). *See id.* at ¶¶ 393, 492, 466, 473. He also awarded Respondents attorneys' fees and costs consistent with the terms of the agreements in the amount of approximately $9.3 million as the prevailing parties. *Id.* at ¶¶ 487–92. Petitioners moved to vacate the First Arbitration Award. *See China Fortune Land Development v. 1955 Capital Fund I GP LLC*, 19-cv-07043-VC, Dkt. No. 1. Judge Chhabria of this court denied the motion, *see id.*, Dkt. No. 52, and the Ninth Circuit affirmed, *id.*, Dkt. Nos. 73-1, 106.

Just a few months after the First Arbitration Award, GIIL also filed a lawsuit in California Superior Court against Andrew Chung, the managing member of the GPs (the "Chung Action"). *See* Case No. *Global Industrial Investment Limited v. Chung*, Case No. 19-cv-07670-LHK, Dkt. No. 1-1, Ex. A. GIIL claimed that Mr. Chung had breached his fiduciary duties or aided and abetted breaches of fiduciary duties against GIIL in managing the Funds. *Id.* at ¶¶ 16–34. Mr. Chung removed the case to the Northern District of California. *See id.* at Dkt. No. 1. Mr. Chung then moved to dismiss the claims, arguing that they were all barred by res judicata because they involved the same conduct at issue in the First Arbitration. *See id.*, Dkt. No. 32. Judge Koh of this court agreed, and dismissed the case with prejudice in September 2020. *See Glob. Indus. Inv. Ltd. v. Chung*, No. 19-CV-07670-LHK, 2020 WL 5355968, at *5–8 (N.D. Cal. Sept. 7, 2020).

While the Chung Action was still pending, Petitioners initiated a second arbitration on October 29, 2019 (the "Second Arbitration"). *See* Second Arbitration Award at ¶¶ 5, 27. Petitioners argued that the GPs had again breached their fiduciary duties under the Investment Agreements following the First Arbitration Award. *See id.* at ¶¶ 318–19, 321, 383. They further argued that the Funds should be dissolved because it was not possible to fulfill the Funds' purpose. *See id.* at ¶¶ 5, 137–40, 317, 324. Respondents counterclaimed that Petitioners had breached the implied covenant of good faith and fair dealing. *See id.* at ¶¶ 329, 517. On October 30, 2021, the arbitrator, Arif Hyder Ali, issued the final award. *See* Second Arbitration Award. Arbitrator Ali found that Respondents had breached their fiduciary duties in myriad ways, ordered the dissolution of the Funds, and entered judgment in favor of Petitioners for approximately $9 million plus interest, costs, and $425,014.11 in attorneys' fees. *See id.* at ¶¶ 587–98.

//

## II. LEGAL STANDARD

Section 9 of the Federal Arbitration Act ("FAA") provides that when presented with an application to confirm an arbitration award, the district court "must grant an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. "'Neither erroneous legal conclusions nor unsubstantiated factual findings justify a federal court review of an arbitral award.'" *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) (quoting *Kyocera v. Prudential-Bache T Servs.*, 341 F.3d 987, 994 (9th Cir. 2003) (en banc)). Rather, grounds for vacating an award are limited to those specified by statute. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding Section 10 provides the FAA's exclusive grounds for vacatur of an arbitration award). Thus, the role of the courts in reviewing arbitration awards is extremely circumscribed. *See Southern California Gas Co. v. Utl. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001) (citing *Stead Motors v. Auto. Machinists Lodge*, 886 F.2d 1200, 1208, n.8 (9th Cir. 1989) (en banc)). The confirmation of an arbitration award is meant to be a summary proceeding. *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003).

The FAA authorizes courts to vacate an award when (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrator; (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made. *See* 9 U.S.C. § 10(a).

## III. DISCUSSION

Here, Respondents contend that the Court should vacate the arbitration award because (1) it is barred by res judicata; and (2) the arbitrator exceeded his authority in dissolving the Funds.[3] The Court disagrees with both arguments.

---

[3] In their petition to vacate the arbitration award, Respondents also argued that the arbitration award was not final. *See* Dkt. No. 35 at 34–35. However, Respondents have since withdrawn this argument. *See* Dkt. No. 40. The Court therefore only addresses their remaining arguments.

### A. Res Judicata

Respondents claim that the arbitration award is barred by res judicata based on the First Arbitration Award and the Chung Action. Res judicata, also known as claim preclusion, limits the ability of litigants to relitigate matters. The doctrine "serves to promote judicial efficiency by preventing multiple lawsuits and to enable the parties to rely on the finality of adjudications." *Dodd v. Hood River County*, 136 F.3d 1219, 1224–25 (9th Cir. 1998). Res judicata applies where there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (quotation omitted). Where these factors are met, res judicata not only bars claims that were actually adjudicated in the prior action, but also *all claims that could have been raised* in that action. *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).

#### i. Waiver

As an initial matter, Petitioners argue that Respondents waived any argument that the claims in the Second Arbitration are precluded by the Chung Action. *See* Dkt. No. 42 at 16–18. As Respondents' own motion acknowledges, their post-hearing brief before Arbitrator Ali "focused on the res judicata effect of the First Arbitration . . . ." *See* Dkt. No. 35 at 21. Nevertheless, Respondents urge that because they framed the res judicata argument broadly, Arbitrator Ali "had every opportunity to consider the res judicata effect of the Chung Action." *Id.*

However, even a cursory review of Respondents' post-hearing brief in the Second Arbitration illustrates that their entire res judicata argument was premised on the First Arbitration—not the Chung Action. *See* Dkt. No. 35-11, Ex. J at ¶ 109 ("Collateral estoppel and res judicata, among other factors, prevent reconsideration of the issues and claims determined in the Final Award."); *id.* at ¶ 113 ("CFLD's claims for dissolution and injunctive and declaratory relief are obvious efforts to prevail on causes of action here that it lost in the prior arbitration and effectively overrule key aspects of the Final Award."); *id.* at ¶ 114 ("Granting any of [Petitioners'] requested relief] would functionally reverse the Final Award and render the judgment the Ninth Circuit Court of Appeals affirmed a meaningless piece of paper."); *id.* at ¶ 115 ("[Petitioners] have repeatedly assured [Arbitrator Ali] that they are not attacking the Final Award in these

5

1  proceedings, but that is exactly what they are doing . . . ."); *id.* at ¶ 116 ("The causes of actions in
2  the two arbitrations are styled differently . . . but the end goal is the same."). Moreover, all
3  Respondents' citations in support of its res judicata argument were to the First Arbitration Award.
4  *See generally id.* at ¶¶ 109–118. This is consistent with the Second Arbitration Award itself,
5  which only addressed whether Petitioners' claims were barred by the doctrine of res judicata based
6  on the First Arbitration. *See* Second Arbitration Award at ¶¶ 339–47.

7        Respondents rely heavily on a district court case, *Immersion Corp. v. Sony Computer*
8  *Entm't Am. LLC*, 188 F. Supp. 3d 960, 974 (N.D. Cal. 2016), to suggest that their broad reference
9  to res judicata is sufficient to capture the more specific argument about the Chung Action. In
10 *Immersion Corporation*, the court relied on the public policy exception to deferential review of
11 arbitration awards. *See id.* The court cited *Aramark Facility Services v. Service Employees*, in
12 which the Ninth Circuit stated that "a court need not, in fact cannot, enforce an award which
13 violates public policy." *See Aramark Facility Servs. v. Serv. Emps. Int'l Union, Loc. 1877, AFL*
14 *CIO*, 530 F.3d 817, 823 (9th Cir. 2008) (quotation omitted). Respondents have not pointed to any
15 such exception here. To the contrary, "[r]es judicata is an affirmative defense that can be waived."
16 *See ASCII Corp. v. Softool Corp.*, 211 F.3d 1272 (9th Cir. 2000) (citing Fed. R. Civ. P. 8(c)).
17 Respondents' reliance on *Immersion Corporation* is thus misplaced. Respondents have waived
18 any argument that the Second Arbitration is barred under res judicata by the Chung Action.

19       Respondents nevertheless urge that the Court should decide the res judicata issue itself.
20 *See* Dkt. No. 35 at 19–22. Quoting *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, Respondents
21 contend that "the court issuing the original decision is best equipped to determine what was
22 considered and decided in that decision and thus what is or is not precluded by that decision." *See*
23 Dkt. No. 35 at 19 (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1134 (9th
24 Cir. 2000)); *see also* Dkt. No. 49 at 3–4. But this principle is inapplicable where, as here, the
25 Court did not issue the original decision. Arbitrator Ghikas substantively addressed the parties'
26 claims in the First Arbitration. And Judge Koh—not this Court—determined that the claims
27 against Mr. Chung in *Global Industrial Investment Limited v. Chung*, Case No. 19-cv-07670-
28 LHK, were barred by res judicata based on the First Arbitration. Given this procedural history, the

Court is not better equipped than Arbitrator Ali to determine the application of res judicata to the parties' current claims. *See Chiron*, 207 F.3d at 1134 (rejecting application of this principle where the court "was not uniquely qualified to ascertain [the] scope and preclusive effect" of a prior award); *see also Collins v. D.R. Horton*, 505 F.3d 874, 880 (9th Cir. 2007) (noting that arbitrators "generally are entitled to determine in the first instance whether to give [a] prior judicial determination preclusive effect").

Respondents next suggest that the Court may address the res judicata issue *sua sponte* notwithstanding any waiver. *See* Dkt. No. 35 at 21–22; Dkt. No. 49 at 4. Respondents are correct that courts "have the ability to overlook waiver and raise the res judicata issue *sua sponte* . . . ." *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 329 (9th Cir. 1995). However, the Court finds it inappropriate to do so here. The doctrine of res judicata is intended to "vindicate[e] [] both public and private interests." *Id.* at 330. Neither would be served by the Court's intervention.

"The private values protected include shielding litigants from the burden of re-litigating identical issues with the same party, and vindicating private parties' interest in repose." *Id.* Yet Respondents did not re-litigate the same issues in the Second Arbitration as were raised in the Chung Action. Judge Koh described the nature of the issues raised in the Chung Action:

> The FAC claims that Chung breached fiduciary duties by (1) making and concealing unauthorized changes to the limited partnership agreements . . .; (2) hiring his wife a part-time consultant for unspecified services at an outsized salary . . .; (3) devoting his time and focus to raising other funds . . .; and (4) failing to appropriately staff the funds or identify new investments . . . .

*Chung*, 2020 WL 5355968, at *5. In contrast, the Second Arbitration involved separate, subsequent conduct "aris[ing] out of the Parties' relationship and submissions regarding the GPs' conduct and the Parties' relationship following the 2019 [Second Arbitration] Award." *See* Second Arbitration Award at ¶ 344; *see also* Dkt. No. 42 at 22–24. For example, in 2019 (after the First Arbitration), the GPs served notices of accrual of interest on the two unpaid installment payments. *See* Second Arbitration Award at ¶¶ 229, 231, 361–79, 398–405. In January 2020, the GPs sent Petitioners additional capital calls. *See id.* at ¶¶ 252–56, 270–75, 420–26. During this

7

time, the GPs also reserved a majority of the available capital for their own management fees. *See id.* at ¶¶ 257–66, 420–26. And when Petitioners asked to review the Funds' books, the GPs failed to provide fulsome information. *See id.* at ¶¶ 276–88, 437–49. In short, Respondents were not forced to relitigate the same issues as were raised in the Chung Action.

Moreover, as the Supreme Court has cautioned, "[p]arties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator." *United Steelworkers of Am., AFL-CIO-CLC v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981). Yet that is precisely what Respondents ask the Court to do here: decide a res judicata argument that the parties did not raise and that Arbitrator Ali did not address. Only after Arbitrator Ali determined that the Second Arbitration is not barred by the First Arbitration did Respondents raise their current argument that the Second Arbitration is barred by the Chung Action. The Court declines to ignore this apparent gamesmanship.

The public interest also does not warrant consideration of res judicata despite Respondents' waiver. "The public interests served [by res judicata] include avoiding inconsistent results and preserving judicial economy." *Clements*, 69 F.3d at 330. As described above, however, the issues raised in the Chung Action and Second Arbitration were distinct. Judge Koh simply dismissed the Chung Action in its entirety, finding that the claims were barred by res judicata because they involved the same conduct at issue in the First Arbitration. As Arbitrator Ali described in great detail, the Second Arbitration Award does not conflict with the First Arbitration Award. *See, e.g.*, Second Arbitration Award at ¶ 347 ("Nothing in this award overturns any findings of Arbitration Ghikas. This award adjudicates upon the Parties' claims regarding the events that took place after the 2019 Award was issued."). There is therefore no risk of inconsistent results among the First Arbitration Award, the Chung Action, and the Second Arbitration Award. The Court agrees with Petitioners that "[r]ather than trying to conserve judicial resources," Respondents' belated argument "compound[s] them." *See* Dkt. No. 42 at 24.

\*   \*   \*

To the extent Respondents still argue that the Second Arbitration is barred by the First

8

Arbitration, the Court agrees with Arbitrator Ali's reasoning and adopts it in its entirety. *See* Second Arbitration Award at ¶¶ 339–47. Res judicata does not bar the Second Arbitration.

### B.  Arbitrator's Authority

Irrespective of res judicata, Respondents argue that Arbitrator Ali exceeded his authority under the Investment Agreements when he dissolved the Funds. *See* Dkt. No. 35 at 27–31. Respondents argue that the Investment Agreements prescribe discrete circumstances in which dissolution is appropriate, all of which are inapplicable here. *See id.* The parties therefore ask the Court to consider the meaning of the Investment Agreements.

#### i.  Standard of Review

The parties dispute the standard of review that the Court should apply in resolving the meaning of the Investment Agreements and the arbitrator's power. *Compare* Dkt. No. 35 at 27–28, *with* Dkt. No. 42 at 26–27, 30–31, & n.13. Respondents argue that no deference is owed to an arbitrator's award where the award exceeds his remedial authority. *See* Dkt. No. 35 at 27. The Ninth Circuit has noted that an "award will not be shielded from judicial scrutiny intended to insure that the award is grounded on the agreement of the parties and the issues they present for resolution." *Coast Trading Co. v. Pac. Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir. 1982). Petitioners, however, note that the Ninth Circuit has considered under what circumstances an arbitrator exceeds his authority. *See* Dkt. No. 42 at 30–31. Since *Coast Trading*, the Ninth Circuit has clarified that "[a]n arbitrator does not exceed its authority if the decision is [premised on] a plausible interpretation of the arbitration contract." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010) (quotation omitted). "Accordingly, the court must defer to the arbitrator's decision as long as the arbitrator even arguably construed or applied the contract." *Id.* (quotations and alterations omitted); *see also id.* at 1180 (noting that the arbitrator's "reading of the [] contract need not be correct; rather, it must draw[] its essence from the terms of the contract"). "This is a high standard for vacatur," and requires something more than error, or even serious error. *See Lagstein v. Certin Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).

Respondents do not explain why *U.S. Life Insurance* should not guide the Court's analysis

United States District Court
Northern District of California

here. Notably, all their authorities predate the *U.S. Life Insurance* opinion. Respondents' argument that de novo review is appropriate would also upend the FAA, "which enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award." *Bosack*, 586 F.3d at 1102. Under Respondents' approach, a clever attorney could nearly always recharacterize any disagreement with an arbitrator's legal conclusions or factual findings as an instance of the arbitrator exceeding his power so as to compel de novo review. None of Respondents' authorities support such a broad reimagining of the FAA. The Court is not persuaded that de novo review of the arbitrator's award is appropriate under these circumstances. Rather, the Court must simply determine whether the arbitrator's decision was based on "a plausible interpretation of the arbitration contract." *U.S. Life Ins.*, 591 F.3d at 1177 (quotation omitted); *see also* P*hoenix Newspapers, Inc. v. Phoenix Mailers Union Loc. 752, Int'l Bhd. of Teamsters*, 989 F.2d 1077, 1081 (9th Cir. 1993) ("An arbitration award should be upheld as long as it draws its essence from the [] agreement. . . . Judicial review is limited to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement."). The Court therefore turns to the language of the Investment Agreements.

### ii. Dissolution

The arbitration provisions describe the limitations on the arbitrator's award:

> The Arbitrator shall be authorized to award compensatory damages, but shall not be authorized (i) to award non-economic damages, such as for emotional distress, pain and suffering or loss of consortium, (ii) to award punitive damages, or (iii) to reform, modify or materially change this Agreement or any other agreements contemplated hereunder, *provided however*, that the damage limitations described in parts (i) and (ii) of this sentence will not apply if such damages are statutorily imposed. The Arbitrator shall also be authorized to grant any temporary, preliminary or permanent equitable remedy or relief he or she deems just and equitable and within the scope of this Agreement, including, without limitation, an injunction or order for specific performance.

*See* Dkt. No. 1-6, Ex. E ("China Fund LPA") at § 14.5(a); Dkt. No. 1-7, Ex. F ("Fund I LPA") at § 15.5(a) (emphasis in original). Respondents emphasize that this language requires that any

1  remedy fashioned by the arbitrator must be "within the scope of the agreement." *See* Dkt. No. 35
2  at 27–28. Petitioners do not appear to dispute this general proposition. Rather, the parties
3  disagree about when dissolution is permitted under the Investment Agreements.
4        According to Respondents, § 10.2 of the Investment Agreements, entitled "Early
5  Termination," provides the exclusive circumstances in which dissolution is permitted. Under
6  § 10.2:

> The Partnership shall dissolve prior to the end of the Partnership's term . . . and the affairs of the Partnership shall be wound up following: (i) the occurrence of an event of withdrawal with respect to the General Partner of the Partnership . . . .; or (ii) the election by both (A) the General Partner, in its sole and absolute discretion, and (B) a Majority in Interest of the Limited Partners.

12 *See* China Fund LPA at § 10.2(a); Fund I LPA at § 10.2(a). There is no dispute that these
13 conditions for early termination did not occur here. There was no event of withdrawal or election
14 by the GPs. But Arbitrator Ali found that neither § 10.2 nor any other provision of the Investment
15 Agreements limits the arbitrator's authority to dissolve the Funds. *See* Second Arbitration Award
16 at ¶¶ 474–83. He explained that the language in § 10.2 "suggests that the Parties merely agreed on
17 additional scenarios that would allow them to dissolve the Funds," outside of those permitted by
18 the Delaware Revised Uniform Limited Partnership Act. *Id.* at ¶ 480. The Court finds this
19 reasoning is plausible, and supported by the plain language of the Investment Agreements.
20       Section 10.2 sets out two circumstances in which early termination is required. The
21 provision states that if either condition is met, "[t]he Partnership *shall* dissolve prior to the end of
22 the Partnership's term . . . ." *Id.* (emphasis added). But the provision does not state that these are
23 the *only* circumstances in which dissolution may be appropriate. Nor does this provision explicitly
24 limit the power of the arbitrator to craft an appropriate remedy. Indeed, it is not clear why a
25 provision about early termination should be relevant to the question of an arbitrator's authority to
26 dissolve the Funds at all.
27       Respondents do not grapple with this language, but suggest that other provisions of the
28 Investment Agreements somehow establish that § 10.2 contains the exclusive grounds for

11

dissolution, even for an arbitrator. Respondents point out, for example, that under § 2.1, "[t]he term of the Partnership . . . shall continue, unless extended pursuant to paragraph 10.1 or sooner dissolved pursuant to paragraph 10.2, until the seventh anniversary of the Effective Date." *See* China Fund LPA at § 2.1; Fund I LPA at § 2.1. And § 2.4 states that "[e]vents [a]ffecting the General Partner," including the sale of substantially all of its interests or assets, "shall not dissolve the Partnership . . . ." *See id.* at § 2.4. Similar provisions limiting the circumstances for dissolution exist for events affecting a Member of the General Partner and a Limited Partner of the Partnership. *See id.* at §§ 2.2, 2.3.

Respondents' arguments, however, do not mean the arbitrator's interpretation of the agreements was implausible. At most, Respondents have identified a possible ambiguity in the agreements. Respondents' argument also appears to prove too much. If § 2.1 should be interpreted to mean that dissolution is only allowed in two limited circumstances (an event of withdrawal or election), there would be no need to include §§ 2.2, 2.3, or 2.4 at all. Because, for example, the sale of substantially all of a Limited Partner of the Partnership's interests or assets is neither an event of withdrawal nor an election,[4] dissolution would be prohibited under the agreement. The very fact that these provisions exist thus suggests that dissolution may occur under other circumstances outside § 10.2.

Moreover, the Investment Agreements describe the arbitrator's authority in broad terms, empowering him "to grant *any* temporary, preliminary or permanent equitable remedy or relief he or she deems just and equitable . . . ." *See* China Fund LPA at § 14.5(a); Fund I LPA at § 15.5(a) (emphasis added). And when the parties wanted to limit the arbitrator's authority, they did so explicitly. Section 14.5(a) states that the arbitrator "shall not be authorized" to award non-economic damages; award punitive damages; or materially change the agreement. *See id.* The fact that the Investment Agreements do not similarly limit the arbitrator's ability to dissolve the Funds is further evidence that the arbitrator is empowered to do so provided it is "just and equitable."

---

[4] *See* Del. Code Ann. tit. 6, § 17-402 (listing events of withdrawal).

1    Respondents repeatedly refer to the dissolution of the Funds as "industrial justice" that
2    conflicts with the terms of the Investment Agreements. *See, e.g.*, Dkt. No. 35 at 29; Dkt. No. 49 at
3    13.  The Court sees no such conflict.  Respondents are asking the Court to read into the Investment
4    Agreements limitations on the arbitrator's authority that are not there.  The Court declines the
5    invitation to rewrite the terms of the parties' agreement.  Arbitrator Ali's exercise of authority to
6    dissolve the Funds was consistent with the terms of the Investment Agreements.  *See* Second
7    Arbitration Award at ¶¶ 474–83.

8    Lastly, Respondents argue that Arbitrator Ali also disregarded the process through which
9    dissolution must occur.  *See* Dkt. No. 35 at 31–32.  Specifically, Respondents contend that under
10   the Investment Agreements, the General Partner should carry out the duties of liquidator.  *See id.*
11   However, the arbitrator permitted the parties to jointly select a liquidator, or if they could not
12   agree, Petitioners could choose the liquidator.  *Id.*; *see also* Second Arbitration Award at ¶¶ 516,
13   598(b).

14   The Investment Agreements state:

> In the event that the Partnership is dissolved pursuant to the provisions of paragraph 10.2(a)(i) [an event of withdrawal], a Majority in Interest of the Partners shall elect one or more liquidators to manage the liquidation of the Partnership in the manner described in this Article 10.  Except as provided in the immediately preceding sentence, the General Partner shall carry out the duties of the liquidator hereunder.

20   *See* China Fund LPA at § 10.2(b); Fund I LPA at § 10.2(b).  Respondents urge that even if the
21   arbitrator had authority to dissolve the Funds outside of § 10.2, he was somehow still bound by the
22   restrictions contained within § 10.2.  Respondents therefore argue that despite Arbitrator Ali's
23   findings that they breached their fiduciary duties over the course of several years, they should still
24   be the liquidator for any dissolution of the Funds.

25   Again, Arbitrator Ali addressed this argument.  *See* Second Arbitration Award at ¶ 516.
26   Because the Funds are not being dissolved pursuant to § 10.2, it was plausible to conclude that
27   § 10.2(b) is inapplicable.  Section 10.2(b) only states that "the General Partner shall carry out the
28   duties of the liquidator *hereunder*."  *Id.* (emphasis added).  There would be no need to include the

word "hereunder" if the parties intended for the General Partner to be the liquidator in any dissolution of the Funds, even those falling outside § 10.2.  As Arbitrator Ali explained, this interpretation would also run counter to the arbitrator's broad authority "to grant any temporary, preliminary or permanent equitable remedy or relief he or she deems just and equitable . . . ." *See* China Fund LPA at § 14.5(a); Fund I LPA at § 15.5(a); *see* Second Arbitration Award at ¶ 516.

Respondents obviously disagree with the Second Arbitration Award.  But as a matter of well-settled law, that is no basis for vacating it, and the Court rejects Respondents' claim that the arbitrator exceeded his authority in ordering the dissolution of the Funds.

## IV. CONCLUSION

The Court **GRANTS** Petitioners' motion to confirm the arbitration award and **DENIES** Respondents' motion to vacate the award.  The motion for preliminary injunction is terminated as **MOOT**.  Dkt. No. 71.  The Clerk is directed to enter judgment in favor of Petitioners consistent with this order and to close the case.

Petitioners have also requested that the Court retain jurisdiction over this action under Federal Rule of Civil Procedure 69 and award them attorneys' fees, costs, and post-judgment interest under 28 U.S.C. § 1961.  *See* Dkt. No. 42 at 35.  Petitioners have not offered any legal or factual support for their requests, nor have they complied with the relevant requirements under the Federal Rules of Civil Procedure or the Civil Local Rules.  The Court therefore **DENIES** Petitioners' requests without prejudice.  The Court understands that the parties have had a tumultuous working relationship (to put it mildly), but expects counsel to work together cooperatively and efficiently to resolve any remaining issues.

**IT IS SO ORDERED.**

Dated: 9/21/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge